# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Thomas Tollefsrud; Katherine
Tollefsrud; Seth Solum; Jared Solum;
Nathan Solum; Ethan Solum; George
Solum; Gary Thomas; Keith Myrah; Ann
Marie Zilly; Laura Solum; Matthew
Solum; Mark Solum; Trisha Solum;
Joseph Solum; Maria Solum; Amy
Solum; Erik Solum; Paul Zilly; Loren
Rud; Larry Johnson; Dale Solum; Lorri
Solum; and Todd Tollefsrud,

               **Plaintiffs,**

**v.**

Karl F. Solum and Suzanne K. Solum,

               **Defendants.**

Civil No. 13-2201 (MJD/JJG)

**REPORT AND RECOMMENDATION**

---

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the undersigned United States Magistrate Judge on Defendants Karl F. Solum and Suzanne K. Solum's Motion to Dismiss Complaint (ECF No. 8). The Honorable Michael J. Davis, Chief Judge of the United States District Court for the District of Minnesota, referred the motion to this Court in an Order of Referral dated September 4, 2013. (Order at 1, Sept. 4, 2013, ECF No. 18.) Defendants argue this action should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) or alternatively stayed until a related state court matter is fully resolved. As set forth below, the Court respectfully recommends that Defendants' motion be granted in part and denied in part.

## I.       Factual Allegations and Claims Alleged in the Complaint

The following facts are alleged in the Complaint. Plaintiffs Thomas Tollefsrud, Katherine Tollefsrud, Seth Solum, Jared Solum, Nathan Solum, Ethan Solum, George Solum, Gary Thomas, Keith Myrah, Ann Marie Zilly, Laura Solum, Matthew Solum, Mark Solum, Trisha Solum, Joseph Solum, Maria Solum, Amy Solum, Erik Solum, Paul Zilly, Loren Rud, Larry Johnson, Dale Solum, Lorri Solum, and Todd Tollefsrud (hereinafter "Maranatha members") brought this action against Defendants Karl F. Solum and Suzanne K. Solum (hereinafter "Karl and Suzanne Solum") to quiet the title of three parcels of real estate, for replevin of a vehicle, and to resolve the ownership of a farming and livestock operation. (Compl. ¶¶ 1, 5, 6, 7, 21, ECF No. 1.) The Maranatha members are citizens of Minnesota, and Karl and Suzanne Solum are citizens of Texas. (Compl. ¶ 10.) Federal jurisdiction is based on diversity of citizenship. (Compl. ¶¶ 11-12.)

### A.       The Maranatha Fellowship

The Maranatha members belong to an unincorporated Christian association known as the Maranatha Fellowship ("Maranatha"). (Compl. ¶ 21.) Maranatha was founded in 1972 by Thomas Tollefsrud and several others "as an expression of their deeply-held religious convictions." (Compl. ¶¶ 21, 23.) The group "does not have a formal organizational structure, official membership policy, formal titles or formal leadership positions. All decisions are made collectively by the group." (Compl. ¶ 24.) Members of Maranatha are engaged in numerous businesses and enterprises such as logging, farming, and carpentry. (Compl. ¶ 28.) Some of the goods produced are sold outside the group, and some are used by the Maranatha community. (Compl. ¶ 28.) Members of Maranatha enter into unwritten and written agreements with each other regarding treatment of the group's property and assets. (Compl. ¶ 31.) Those agreements

establish "that no one person involved in the real properties or businesses of the group, has the right to claim an individual ownership interest or title in any properties, businesses, vehicles or equipment that were purchased for the group or with the funds from the group's members or businesses." (Compl. ¶ 31.) While members of Maranatha may leave the group at any time, no individual has any right to take or claim any Maranatha assets or property. (Compl. ¶ 29.) A departing member may take all of his or her personal property, however, such as household items or vehicles. (Compl. ¶ 30.)

Karl and Suzanne Solum were members of Maranatha for approximately thirty-five years until 2008 when they left the group and moved to Texas. (Compl. ¶ 25.) During their association with Maranatha, they fully understood and agreed to the group's guiding principles. (Compl. ¶¶ 33, 34, 39.) Nevertheless, after Karl and Suzanne Solum left Maranatha, they claimed individual rights to some of the group's assets such as a parcel of logging land, a logging truck, a farming operation, and two other parcels of real estate. (Compl. ¶ 41.) Karl and Suzanne Solum also took their personal property, and Maranatha does not dispute their right to have done so. (Compl. ¶ 42.)

### B. The Logging Land and Logging Truck

One of Maranatha's businesses is a logging enterprise. (Compl. ¶ 50.) The group sells timber outside the community, as well as uses the timber in its carpentry and mill workshops. (Compl. ¶ 50.) All proceeds are used to support the group and its mission. (Compl. ¶ 51.) Twenty acres of logging land in rural Fillmore County, Minnesota ("Logging Land"), were purchased with funds from the group's logging business "under a covenant of love and trust for Maranatha." (Compl. ¶ 54.) The group recorded the title to the Logging Land in the name of several Maranatha members, including Karl Solum. (Compl. ¶ 54.) A 2003 Peterbilt logging

truck ("Logging Truck") was also purchased with Maranatha's assets, and the title was recorded in the name of Karl Solum under a similar covenant. (Compl. ¶¶ 55, 56.)

After Karl and Suzanne Solum left Maranatha in 2008, they brought an action against the Maranatha members in Houston County District Court, in part to determine the ownership of the Logging Land and Logging Truck. (Compl. ¶ 59.) These proceedings will be discussed in greater detail below.

### C.       The Dairy Road Property

In 1975, Plaintiffs Thomas and Katherine Tollefsrud purchased a fifteen-acre property located at 19325 Dairy Road in Spring Grove, Minnesota ("Dairy Road Property"). (Compl. ¶¶ 63, 67.) The Dairy Road Property is owned and managed by Maranatha under the same principles and covenants as the Logging Land and Logging Truck. (Compl. ¶ 64.)

Not long after the property was purchased, Karl and Suzanne Solum moved into a home on the property. (Compl. ¶ 68.) They did not purchase or rent the property and were not responsible for improvements or upkeep. (Compl. ¶ 68.) Over the years, the group made major improvements to the property and repaired it as needed. (Compl. ¶ 69.) Karl and Suzanne Solum raised their five sons, all of whom remain members of Maranatha, according to the group's teachings and principles. (Compl. ¶ 70.) In 1993, the Dairy Road Property was titled in Karl and Suzanne Solum's names under a covenant of love and trust and for the overall benefit of the group. (Compl. ¶ 71.) There was no purchase or gift involved, and Karl and Suzanne Solum agreed they had no ownership interest. (Compl. ¶ 71.) However, when Karl and Suzanne Solum left the group, they claimed to be the sole owners of the Dairy Road Property, and they sought to quiet title to this property as well in the action commenced in Houston County District Court. (Compl. ¶¶ 72, 74.)

D.     **The Second Avenue Northwest Property**

In 1994, the Maranatha group purchased a twenty-five acre property at 520 Second Avenue Northwest in Spring Grove, Minnesota ("Second Avenue Northwest Property"). (Compl. ¶ 79, 83.) The property was titled in the names of Karl and Suzanne Solum under a covenant of love and trust and for the overall benefit of the group. (Compl. ¶ 84.) As with the Dairy Road Property, Karl and Suzanne Solum provided no consideration for the purchase of the Second Avenue Northwest Property, and the property was not intended as a gift. (Compl. ¶ 84.) The property is used for a pallet business, a plaque business, farmland, pastureland, and storage for farm equipment and machinery. (Compl. ¶ 86.) Karl and Suzanne Solum never worked at the pallet business or lived on the property, although they did use the pastureland and farmland along with other group members. (Compl. ¶¶ 86, 87.) They sought to quiet title to this property in state court, too.

E.     **The Farming Operation and Assets**

Many of the Maranatha members are engaged in farming. (Compl. ¶ 99.) The purpose of the farming operation is to raise crops on several farms owned by the group in accordance with Maranatha's principles and covenants, not to operate a business for profit. (Compl. ¶ 100.) All farming assets and profits belong to the group under a covenant of love and trust, and no person has any individual right to assets or property. (Compl. ¶ 100.) After Karl and Suzanne Solum left Maranatha, they claimed that the farming operation was a business and that Karl Solum was entitled to profits and assets such as equipment and machinery. (Compl. ¶¶ 106, 108.)

F.     **The Maranatha Members' Claims**

Based on the foregoing factual allegations, the Maranatha members assert the following claims: (1) Count One – to quiet title and for ejectment of the Logging Land and to quiet title of

the Logging Truck; (2) Count Two – for replevin of the Logging Truck and assets of the farming operations; (3) Count Three – to quiet title and for ejectment of the Dairy Road Property; (4) Count Four – to quiet title of the Second Avenue Northwest Property; and (5) Count Five – for unjust enrichment. As relief, they seek to quiet the title of the real property, for replevin of the Logging Truck, and for replevin of the farming operation assets. They seek no monetary damages.

## II.    Facts Derived from the State Court Proceedings

Karl and Suzanne Solum are challenging the Court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). A party contesting subject matter jurisdiction may mount either a facial or factual attack to the court's jurisdiction. *Osborn v. United States*, 918 F.2d 724, 729-30 & n.6 (8th Cir. 1990). On a facial attack, the Court limits its consideration to the allegations of the complaint. *Id.* at 729 & n.6. On a factual attack, the Court may consider matters outside the pleadings without converting the motion to one for summary judgment. *Id.*

Karl and Suzanne Solum raise a fact-based challenge to subject matter jurisdiction, and both sides have submitted evidence such as state court orders and public filings for the Court's consideration. The Court will consider the evidence and summarize it below.

### A.    Pleadings Filed in the State Court Case

Karl and Suzanne Solum brought suit against the Maranatha members in Houston County District Court in October 2009, alleging the following relevant facts in a verified complaint. After Karl and Suzanne Solum left Maranatha, several members approached Karl Solum and asked him to transfer all property held in his name to other members of the group. (Hammell Aff. Ex. A ¶ 43, Aug. 26, 2013, ECF No. 11.) When he refused, they threatened him with trespass charges and denied him access to his home. (*Id.*)

Karl Solum operated a logging business for years before his departure from the group. (*Id.* ¶ 45.) Other Maranatha members also worked in the logging business as informal partners and shared the net profits equally. (*Id.* ¶ 47.) After Karl Solum left the group, other members of Maranatha took possession of the logging equipment and fulfilled contracts he had procured without proper payment to him. (*Id.* ¶ 52.) The assets of the logging business included a truck, a skidder, twenty acres of real estate, and other equipment. (*Id.* ¶ 51.) Karl Solum also operated a farming business with Plaintiff George Solum. (*Id.* ¶ 53, 56.) The business was run as a partnership, and the partners had equal ownership to the equipment purchased for the business. (*Id.*) After Karl Solum left Maranatha, other members of the group took possession of the farming equipment and other assets. (*Id.* ¶ 56.)

Karl and Suzanne Solum owned the Dairy Road Property and the Second Avenue Northwest Property as absolute owners in fee simple. (*Id.* ¶¶ 58, 60.) Karl and Suzanne Solum allowed the Maranatha group to use the property, but no rental agreement or lease was ever executed. (*Id.* ¶ 63.) When Karl and Suzanne Solum tried to sell the property, the Maranatha members blocked the sale by filing notices of adverse claim. (*Id.* ¶¶ 62, 64.)

Based on the foregoing alleged facts, Karl and Suzanne Solum asserted claims to quiet title and for trespass, conversion, slander of title, ejectment, an accounting of the logging and farming businesses, interference with contractual relationships, civil conspiracy, and unjust enrichment. They also asserted breach of fiduciary duty claims concerning the logging business and the farming business and asked that a constructive trust be imposed over any property or funds acquired or generated. Karl and Suzanne Solum also sought a dissociation of the logging and farming partnerships, injunctive relief, an award of monetary damages, forfeiture of compensation, and declaratory relief.

The Maranatha members filed three separate answers and counterclaims. (Hammell Aff. Ex. 3 at 10-11, Sept. 30, 2013, ECF No. 23-3.) Taken together, the counterclaims were to quiet the title of the Dairy Road and Second Avenue Northwest Properties, to impose a resulting trust on the Dairy Road and Second Avenue Northwest Properties, to impose a constructive or implied trust on the Dairy Road and Second Avenue Northwest Properties, for breach of contract, for loss of use of property, for recovery of personal property, for defamation, for invasion of privacy, and for unjust enrichment. (*Id.*; Hammell Aff. Ex. 5, Sept. 30, 2013, ECF No. 23-5.)

**B.      The State District Court's January 10, 2011, Summary Judgment Order**

On January 10, 2011, the Honorable James A. Fabian of the Houston County District Court issued an order on the parties' cross-motions for summary judgment. (Hammell Aff. Ex. 3, Sept. 30, 2013, ECF No. 23.) With respect to Karl and Suzanne Solum's motion for summary judgment, the state district court determined that Karl and Suzanne Solum were the absolute owners in fee simple of the Dairy Road Property. (*Id.* at 2, 16.) The court further determined that the logging business was a partnership and that Karl Solum was entitled to a buyout of his interest, but that a hearing pursuant to Minn. Stat. § 323A.0701 would be necessary to establish the property of the partnership and the amount owed to Karl Solum. (Hammell Aff. Ex. 3 at 2-3, 25, 33.) Karl and Suzanne Solum's motion for summary judgment was denied with respect to their claim of ownership of the Second Avenue Northwest Property, their slander of title claim, and their farming partnership claim. (*Id.* at 2, 20, 23.) The slander of title claim was dismissed, and the property ownership and farming partnership claims were deemed matters for trial. (*Id.* at 19, 23, 25.)

As for the Maranatha members' motion for summary judgment, the state district court dismissed their claim to quiet the title of the Dairy Road Property and denied their motion to

quiet the title of the Second Avenue Northwest Property. (*Id.* at 3.) Consistent with the ruling on Karl and Suzanne Solum's motion for summary judgment, the state district court deemed the ownership of the Second Avenue Northwest Property an issue for trial. (*Id.* at 4.) The Maranatha members' claims for defamation and invasion of privacy were dismissed. (*Id.* at 27, 28.)

Some of the Maranatha members brought a counterclaim asking for a determination of ownership of farming equipment and tractors. (*Id.* at 28.) The state district court found summary judgment not appropriate at that time, on the basis there should first be a determination as to whether a farming partnership existed. (*Id.* at 28, 31.) Other Maranatha members counterclaimed for a determination of ownership of logging equipment. (*Id.* at 29.) Finding that fact questions existed concerning the purchase of the logging equipment, the state district court held that summary judgment was not appropriate on that issue. (*Id.* at 29, 31.) Those same Maranatha members also counterclaimed to quiet the title of the Logging Land. (*Id.* at 30.) The state district court dismissed the counterclaim because the property was located in Fillmore County and explained that "[a] quiet title action must be brought in the county where the property is located." (*Id.*)

### C.    The Minnesota Court of Appeals' December 19, 2011, Opinion

The Maranatha members appealed the state district court's summary judgment decision to the Minnesota Court of Appeals. *See Solum v. Tollefsrud*, No. A11-216, 2011 WL 6306637, at *1 (Minn. Ct. App. Dec. 19, 2011). They raised three issues on appeal: (1) whether Karl and Suzanne Solum had a right to a buyout of their interest in the logging partnership, (2) whether Karl and Suzanne Solum owned the Dairy Road Property or simply held title under a resulting trust for Maranatha, and (3) whether the Maranatha members were entitled to a constructive trust on the real property. *Id.*

With respect to the logging partnership, the Minnesota Court of Appeals held that Karl Solum was bound by the terms of the partnership agreement. *Id.* at *3. That agreement established that a departing partner had no right to take any assets or property and was entitled only to a non-financial blessing. *Id.* at *4. To construe the term "blessing" as encompassing a buyout would strain the plain language of the partnership agreement. *Id.* Thus, Karl Solum was not entitled to a buyout of his interest in the logging partnership.

As to the second issue, the Minnesota Court of Appeals upheld the state district court's determination that no resulting trust existed on the Dairy Road Property. *Id.* at *6. Turning to the third issue, however, the appeals court found genuine issues of material fact regarding whether a constructive trust existed on the Dairy Road Property and whether Karl and Suzanne Solum had been unjustly enriched by the title transfer. *Id.* at *8. The case was remanded to the state district court for further proceedings.

### D.     The State District Court's May 10, 2013, Summary Judgment Order

The next significant event in the state court case occurred on May 10, 2013, when Judge Fabian denied the Maranatha members' motion for summary judgment. (Hammell Aff. Ex. D at 2, Aug. 26, 2013, ECF No. 11.) The first issue under consideration was whether the Maranatha members were entitled to an award of the Logging Land or the Logging Truck. (*Id.* at 5.) The state district court said that no party had brought a cause of action seeking ownership of the Logging Land or the Logging Truck. (*Id.*) Rather, as that court construed the claims, Karl and Suzanne Solum were suing for a buyout or dissolution of the logging partnership, and the state court of appeals had determined that Karl Solum, as a partner, was not entitled to a buyout when he left the group. (*Id.* at 5-6.) The extent of the state appellate court's determination, according to the state district court, was that "Karl Solum shall be bound by the partnership agreement and

thus has no right to partnership property, assets, or finances." (*Id.* at 6.) The state district court concluded, "In order to determine if in fact  . . . Karl Solum owns the logging truck and the logging land personally or on behalf of the logging partnership, a separate cause of action would need to be brought." (*Id.*) The state district court repeated this conclusion twice more in its order: "A separate cause of action will need to be brought if [the Maranatha members] continue to claim the logging truck and logging land to be assets of the logging partnership" (*id.* at 6); "A separate cause of action must be brought if [the Maranatha members] claim ownership of the logging truck and logging land" (*id.* at 9).

The state district court also addressed the ownership of the Dairy Road Property and the Second Avenue Northwest Property. (*Id.*) The court found that material issues of fact existed on these questions and scheduled a bench trial for September 4-6, 2013.[1] (*Id.* at 6-7.) Another issue advanced for disposition on summary judgment concerned the farming partnership. (*Id.* at 7.) The state district court found material questions of fact on this issue as well, suitable for a jury trial. (*Id.* at 7-8.)

The state district court also reserved the right to hold an additional trial on unresolved issues. (*Id.* at 2.) The court explained that Karl and Suzanne Solum had

> raised many claims secondary to the main issues of property ownership and the farming partnership. [The Maranatha members] pointed out that once the issue of ownership over [the Dairy Road Property and the Second Avenue Northwest Property] has been determined, many of the remaining issues raised by [Karl and Suzanne Solum] may be resolved. It is also true that before many of the claims relating to the alleged farming partnership can be address[ed], the issue of whether or not a farming partnership exists must be answered. If no partnership is found, [Karl and Suzanne Solum's] claims relating to the farming partnership will have been resolved. [Karl and Suzanne Solum] must prevail in

---

[1] Karl and Suzanne Solum's attorney notified the Court at the hearing that the trial had been postponed due to a death in Judge Fabian's family.

their claim for property ownership and the existence of a farming partnership before any other issues can be addressed.

(*Id.* at 8-9.)

## III.    Discussion

Karl and Suzanne Solum request dismissal based on principles of collateral estoppel and res judicata. Alternatively, they ask the Court to abstain from exercising jurisdiction pursuant to *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456 (1939); *Younger v. Harris*, 401 U.S. 37 (1971); and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

### A.    Collateral Estoppel

Karl and Suzanne Solum contend that the Maranatha members' claims related to the Logging Truck and Logging Land were resolved in the state court action and are therefore barred by the doctrine of collateral estoppel. State law governs the applicability of collateral estoppel in diversity cases. *Nanninga v. Three Rivers Elec. Coop.*, 236 F.3d 902, 906 (8th Cir. 2000). Under Minnesota law, collateral estoppel bars a claim when

> (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn. 1982) (quoting *Victory Highway Village, Inc. v. Weaver*, 480 F. Supp. 71, 74 (D. Minn. 1979)). The doctrine "precludes the relitigation of issues which are both identical to those issues already litigated by parties in a prior action and necessary and essential to the resulting judgment." *Id.* (citation omitted).

Collateral estoppel does not apply in the case at hand for the simple reason that there was no final judgment on the merits regarding the Logging Land and Logging Truck. In the state district court's summary judgment order of January 10, 2011, the court found that fact questions existed concerning the purchase of logging equipment and whether the equipment was owned by the logging partnership or by individual partners. Although the court did not specifically mention the Logging Truck, this Court presumes the Logging Truck was included in the generic description of "logging equipment." Nothing in the record indicates otherwise. Further, the Logging Truck was not discussed anywhere else in the order, making it more likely than not that the court considered the Logging Truck as part of the logging equipment. Although the court denied summary judgment to the Maranatha members on their counterclaim, this did not result in an award of the Logging Truck to Karl and Suzanne Solum, as they now suggest. Rather, the court's denial of summary judgment meant that the issue would have to be resolved at trial.

The state district court also addressed Maranatha's counterclaim to the Logging Land in this order. The court dismissed the counterclaim because the property was located in Fillmore County, and "[a] quiet title action must be brought in the county where the property is located." The court's language indicated that its decision was not a final judgment on the merits, but a dismissal without prejudice so that the Maranatha members could bring suit in a Fillmore County court.

Likewise, the Minnesota Court of Appeals did not render a final decision on the Logging Truck or the Logging Land. The three issues before that court were (1) whether Karl and Suzanne Solum had a right to a buyout of their interest in the logging partnership, (2) whether Karl and Suzanne Solum owned the Dairy Road Property or simply held title under a resulting trust for Maranatha, and (3) whether the Maranatha members were entitled to a constructive trust

on the Dairy Road Property. The court limited its discussion of the logging partnership to whether Karl Solum was entitled to a buyout of his partnership interest. The court did not discuss or determine whether certain assets belonged to the partnership, Karl Solum, or any other individual partner. There is no specific mention of the Logging Truck or the Logging Land in the opinion.

After the appeal was concluded and the parties returned to the state district court, that court clearly stated in its order of May 10, 2013, that it *had not* decided and *would not* decide who owned the Logging Land or the Logging Truck. The court stated not just once or twice, but three separate times, that the parties would have to file a new cause of action to resolve whether Karl Solum or Maranatha owned the Logging Truck and Logging Land.[2]

### B.    Res Judicata

Karl and Suzanne Solum next argue that the Logging Truck and Logging Land claims are barred by res judicata. As with the collateral estoppel doctrine, a federal court sitting in diversity must "give preclusive effect to state court judgments whenever the court of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980). Minnesota courts apply the doctrine of res judicata "when (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; (4) the estopped party had a full and fair opportunity to litigate the matter." *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004). While collateral estoppel applies to "issues that were actually litigated, determined, and were essential

---

[2] The state district court's pronouncement in May 2013 that a new action would have to be commenced to determine ownership of the Logging Land and the Logging Truck differs from its ruling in January 2011 that ownership of the Logging Truck and other logging assets would be resolved at trial. Whether the state district court intended that the issue be resolved in a new action or in a trial before that court is immaterial. The key point is that there is presently no final judgment on the merits.

in a prior action, res judicata concerns circumstances giving rise to a claim and precludes subsequent litigation—regardless of whether a particular issue or legal theory was actually litigated." *Id.* The focus of res judicata is the facts that create the cause of action. *Id.* The litmus test is "whether the same evidence would be used in subsequent litigation." *McMenomy v. Ryden*, 148 N.W.2d 804, 807 (Minn. 1967).

To be sure, the two actions at present involve many of the same facts. But the facts alleged in the state court action do not concern the purchase of the Logging Land or Logging Truck or the circumstances surrounding the change in title of the Logging Land. More importantly, as the state district court made plain, ownership of the Logging Land will not be determined in that action. In fact, that claim was dismissed, and the state district court instructed the Maranatha members to bring the claim in the county in which the property is located. Therefore, the same evidence will not be used in both this action and the state court case.

The record is less clear with respect to the Logging Truck. While the state district court indicated in January 2011 that ownership of the Logging Truck would be determined at trial, the court said in May 2013 that Maranatha would have to file a new action in Fillmore County to determine ownership of both the Logging Land and the Logging Truck. In either situation, at least one of the elements required for res judicata will not be met. If the state district court does *not* try the ownership of the Logging Truck, then the facts introduced at trial will not mirror those in the present case. Conversely, if the state district court tries the ownership of the Logging Truck, then the facts introduced at trial likely would be identical to the relevant facts in this case. But that scenario creates another impediment to res judicata in that there will be no final judgment on the merits of the claim until the trial is concluded and judgment entered. Under either scenario, res judicata does not apply at this time.

## C.     *Princess Lida*

Karl and Suzanne Solum urge this Court to decline jurisdiction over the personal and real property at issue, pursuant to *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 457 (1939). In *Princess Lida*, the United States Supreme Court addressed whether a state court's exercise of jurisdiction over the administration of a trust deprived a federal court of jurisdiction over a subsequent action involving the same trust. 305 U.S. 456, 457 (1939). The trust at issue was created as part of a divorce settlement. *Id.* at 457-58. When the former husband repudiated the trust, the trustees brought suit in state court, and the former wife brought suit in federal court. *Id.* at 458-59. The issue in both cases was the administration of the trust. The state court enjoined the federal court's administration of the trust, and federal court enjoined the state court's administration of the trust. *Id.* at 460-61. In addressing the jurisdictional question, the Supreme Court noted that both courts could properly proceed "at least until judgment is obtained in one of them which may be set up as res judicata in the other." *Id.* at 466. However, "if the two suits are in rem, or quasi in rem," and the court must take possession of or control the property at issue in order to grant the relief sought, then one court must yield its jurisdiction to the other. *Id.* In that circumstance, the court first assuming jurisdiction "may maintain and exercise that jurisdiction to the exclusion of the other." *Id.* This principle applies not only to property seized under judicial process, but also in actions brought to administer trusts, liquidate estates, or control property. *Id.*

In the case at hand, there is no trust or other res that the state court has taken into its possession or control or is administering. In addition, none of the Maranatha members' claims in the case before this Court would require the Court to take possession of or to control the administration of any property. (*See generally* Compl.) The Maranatha members do not ask this

Court to create or administer a trust, but they seek simply to quiet the title of the property at issue in their names. As explained in C*olorado River Water Conservation District v. United States*,

> The present suit, in short, is not analogous to the administration of a trust, but rather to a claim of a "right to participate," since the United States in this litigation does not ask the court to control the administration of the river, but only to determine its specific rights in the flow of water in the river. This is an almost exact analogue to a suit seeking a determination of rights in the flow of income from a trust.

424 U.S. 800, 823 (1976). Similarly, in this action, the Maranatha members ask the Court only to determine their rights to certain property. They do not want the Court to control the administration of any property. Accordingly, *Princess Lida* does not require the Court to yield its jurisdiction to the state court.

### D. *Younger*

Under the *Younger* abstention doctrine, "a federal court should decline jurisdiction over suits for equitable relief that unnecessarily interfere with state court proceedings." *Uland v. City of Winsted*, 570 F. Supp. 2d 1114, 1118 (D. Minn. 2008). The doctrine originated from principles of federalism and comity, *Hudson v. Campbell*, 663 F.3d 985, 987 (8th Cir. 2011), and derived its name from *Younger v. Harris*, 401 U.S. 37 (1971). *Younger* itself held that "federal courts should not enjoin pending state criminal prosecutions." 401 U.S. at 54. The doctrine was later expanded and extended to civil proceedings. *See Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 676 n.3 (8th Cir. 2013).

A federal court should abstain from exercising its jurisdiction "when (1) there is an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) the state proceedings provide an adequate opportunity to raise constitutional challenges." *Sprint Communic'ns Co., L.P. v. Jacobs*, 690 F.3d 864, 867 (8th Cir. 2012) (citing *Middlesex Cnty.*

*Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). In addition, there must be "no showing of bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate." *Middlesex Cnty.*, 457 U.S. at 435.

In the situation at present, there is an ongoing judicial proceeding in Houston County District Court. The state court case was filed four years ago, was appealed and remanded, and is now ready for trial. While the state court case no longer includes claims relating to the Logging Land, and possibly the Logging Truck, the case does include claims of ownership involving the Second Avenue Northwest Property, the Dairy Road Property, and all claims arising from the farming partnership. Thus, the first factor is satisfied with respect to these latter claims.

With respect to the state interest prong, property ownership and the security of titles to real estate are important state interests. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 (1994); *Shaffer v. Heitner*, 433 U.S. 186, 207-08 (1977); *Piletich v. Deretich*, 328 N.W.2d 696, 700 (Minn. 1982) (quoting *Jones v. Wolf*, 443 U.S. 595 (1979)). In addition, a state has a strong interest "in protecting the authority of [its] judicial system, so that its orders and judgments are not rendered nugatory." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 n.12 (1987) (internal quotation omitted). The state district court and court of appeals have made rulings concerning the Second Avenue Northwest Property, the Dairy Road Property, and the farming partnership, and the state district court has issued an order setting those matters for trial. Accordingly, the second factor is met.

Third, the state proceeding offers an opportunity to raise federal constitutional questions, even though no party has raised one thus far. The Maranatha members argue that the absence of a federal constitutional question precludes the application of the *Younger* abstention doctrine, but they cite no authority for this position. *Younger* abstention requires only that the state proceeding

provide an *opportunity* to raise a constitutional challenge, not that a party *must* raise a constitutional challenge. *See Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1249 n.2 (8th Cir. 2012) (where federal litigants did not raise constitutional arguments in state court, remarking, "[b]ut that is no bar to application of *Younger* abstention because all that is required is that the federal plaintiff had the opportunity to raise federal issues in the state-court actions."). Consequently, the third factor is satisfied.

Lastly, the Maranatha members have shown no bad faith, harassment, or any other extraordinary circumstance making abstention inappropriate. Accordingly, based on the relevant factors, the Court concludes it should abstain from exercising jurisdiction over claims involving the Second Avenue Northwest Property, the Dairy Road Property, and the farming partnership.

Two additional points bear motion, the first of which is whether the claims should be dismissed or stayed. When only equitable relief is sought, leaving no possibility that the parties will return to federal court for monetary damages, dismissal is appropriate. *See Int'l Ass'n of Entrepreneurs of Am. v. Angoff*, 58 F.3d 1266, 1271 (8th Cir. 1995). Here, the Maranatha members have sought only equitable relief, and thus, the claims should be dismissed rather than stayed. Second, dismissal should be without prejudice. *Caldwell v. Camp*, 594 F.2d 705, 708 (8th Cir. 1979).

E.     *Colorado River*

Although the Court has found abstention appropriate under the *Younger* doctrine, the Court will briefly discuss why *Colorado River* abstention is not appropriate. Under the *Colorado River* abstention doctrine, a court may dismiss a "federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration," but only when parallel state and

federal actions exist and exceptional circumstances warrant dismissal. *Colorado River*, 424 U.S. at 818.

Colorado River abstention is not appropriate here for the simple reason that the state and federal actions are not parallel. Unlike some circuits, the Eighth Circuit requires more than substantially similar parties and claims. *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 535 (8th Cir. 2009). There must be "a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Id.* In the case at hand, the state court action will not fully dispose of the claims in this case, specifically, the ownership of the Logging Land and probably the Logging Truck. Consequently, the actions are not parallel, and the inquiry stops here.

## IV.    Conclusion

The state district court specifically instructed the Maranatha members to bring a new lawsuit in pursuit of their claims of ownership of the Logging Truck and the Logging Land. Heeding that advice, the Maranatha members filed the present action. Ownership of the Logging Land is not pending before any other court, nor has it been resolved by any other court. From the language in the state district court's most recent summary judgment order, it appears that ownership of the Logging Truck is no longer at issue in that case, either. No party appealed that ruling. This Court should not abstain from exercising jurisdiction over the Maranatha members' claims to the Logging Land and Logging Truck or over the unjust enrichment claim as it pertains to the Logging Land and Logging Truck.

In commencing the present action, the Maranatha members also alleged claims that were brought in state court four years ago and are on the precipice of resolution. Those claims relate to the Second Avenue Northwest Property, the Dairy Road Property, and the farming partnership.

The Court should abstain from jurisdiction over those claims pursuant to the *Younger* abstention doctrine.

Finally, nothing in this Report and Recommendation should be construed as an impediment to the Houston County District Court proceeding with the claims before it.

Accordingly, **IT IS HEREBY RECOMMENDED** that:

1.      Defendants Karl F. Solum and Suzanne K. Solum's Motion to Dismiss Complaint (ECF No. 8) be **DENIED** as to claims arising from the Logging Land and Logging Truck and **GRANTED** as to claims arising from the Dairy Road Property, the Second Avenue Northwest Property, and the farming operation; and

2.      Claims related to the Dairy Road Property, the Second Avenue Northwest Property, and the farming operation be **DISMISSED WITHOUT PREJUDICE**.

Dated: November 19, 2013

                                        *s/ Jeanne J. Graham*
                                        JEANNE J. GRAHAM
                                        United States Magistrate Judge

## NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **December 4, 2013**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The District Judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the District Judge is not required to review a transcript or the District Judge directs otherwise.